# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE ART INSTITUTE OF<br>PHILADELPHIA LLC, *et al.*[1]<br><br>                Debtors. | Chapter 7<br><br>Case No. 18-11535 (LSS)<br><br>Jointly Administered<br><br>**Hearing Date: Sept. 19, 2019 at 11:00 a.m. (ET)**<br>**Obj. Deadline: Sept. 12, 2019 at 4:00 p.m. (ET)** |

## MOTION OF U.S. BANK, NATIONAL ASSOCIATION TO ENFORCE STIPULATION AGAINST GEORGE L. MILLER, CHAPTER 7 TRUSTEE

U.S. Bank, National Association ("U.S. Bank" or "Agent"), as administrative agent and collateral agent under that certain Credit Agreement (as defined below), acting at the direction of the Lenders in accordance with the terms of the Credit Agreement, by and through its undersigned counsel, hereby files this motion (this "Motion to Enforce") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), enforcing

---

[1] The last four digits of the Debtors' taxpayer identification numbers are as follows: American Education Centers, Inc. (6160); Argosy Education Group, Inc. (5674); Argosy University of California LLC (1273); Brown Mackie College - Tucson, Inc. (4601); Education Finance III LLC (2533); Education Management LLC (6022); Education Management II LLC (2661); Education Management Corporation (9571); Education Management Holdings II LLC (2529); Higher Education Services II LLC (3436); Miami International University of Art & Design, Inc. (1065); South Education – Texas LLC (2573); South University of Florida, Inc. (9226); South University of Michigan, LLC (6655); South University of North Carolina LLC (9113); South University of Ohio LLC (9944); South University of Virginia, Inc. (9263); South University, LLC (7090); Stautzenberger College Education Corporation (4675); TAIC-San Diego, Inc. (1894); TAIC-San Francisco, Inc. (9487); The Art Institutes International Minnesota, Inc. (6999); The Art Institute of Atlanta, LLC (1597); The Art Institute of Austin, Inc. (3626); The Art Institute of California-Hollywood, Inc. (3289); The Art Institute of California-Inland Empire, Inc. (6775); The Art Institute of California - Los Angeles, Inc. (4215); The Art Institute of California-Orange County, Inc. (6608); The Art Institute of California-Sacramento, Inc. (6212); The Art Institute of Charleston, Inc. (6048); The Art Institute of Charlotte, LLC (4912); The Art Institute of Colorado, Inc. (3062); The Art Institute of Dallas, Inc. (9012); The Art Institute of Fort Lauderdale, Inc. (0255); The Art Institute of Houston, Inc. (9015); The Art Institute of Indianapolis, LLC (6913); The Art Institute of Las Vegas, Inc. (6362); The Art Institute of Michigan, Inc. (8614); The Art Institute of Philadelphia LLC (7396); The Art Institute of Pittsburgh LLC (7441); The Art Institute of Portland, Inc. (2215); The Art Institute of Raleigh-Durham, Inc. (8031); The Art Institute of St. Louis, Inc. (9555); The Art Institute of San Antonio, Inc. (4394); The Art Institute of Seattle, Inc. (9614); The Art Institute of Tampa, Inc. (6822); The Art Institute of Tennessee-Nashville, Inc. (5359); The Art Institute of Virginia Beach LLC (2784); The Art Institute of Washington, Inc. (7043); The Art Institutes International II LLC (9270); The Illinois Institute of Art at Schaumburg, Inc. (3502); The Illinois Institute of Art, Inc. (3500); The Institute of Post-Secondary Education, Inc. (0283); The New England Institute of Art, LLC (7798); The University of Sarasota, Inc. (5558);Western State University of Southern California (3875).

that certain *Stipulation Resolving Objection of George L. Miller, Chapter 7 Trustee, to Proofs of Claim Filed by U.S. Bank, National Association as Administrative Agent on Behalf of Itself and Each Secured Claimant* (the "Stipulation")[2] against George L. Miller, as chapter 7 trustee (the "Trustee") of Debtors Education Management II LLC, Education Finance III LLC, Education Management Corporation ("EMC"), Education Management Holdings II LLC, Higher Education Services II LLC, and The Art Institutes International II LLC (collectively, the "Credit Party Debtors"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. U.S. Bank brings this Motion to Enforce to address the Trustee's refusal to consent to the release of approximately $9.6 million of the Agent's and Lenders' Collateral in express violation of the turnover requirements of the Stipulation.[3]

2. At the outset of these cases, U.S. Bank and the Trustee entered into the Stipulation to resolve, among other things, a purported dispute over the validity of U.S. Bank's prepetition foreclosure on substantially all of the Credit Party Debtors' assets, including the Credit Party Debtors' interest in the Surety Collateral (as defined herein). Under the terms of the Stipulation, among other things, the Trustee acknowledged the validity of the foreclosure and expressly agreed to turn over all Collateral in his possession to U.S. Bank upon ten business days' written request.

3. Wells Fargo Bank, National Association ("Wells Fargo") currently holds approximately $9.6 million of surety Collateral (the "Surety Collateral") in a trust account

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Stipulation. A copy of the Stipulation is attached hereto as **Exhibit B**.

[3] On October 25, 2018, this Court approved the Trustee's entry into the Stipulation pursuant to the *Order Approving Stipulation Resolving Objection of George L. Miller, Chapter 7 Trustee, to Proofs of Claim Filed by U.S. Bank, National Association as Administrative Agent on Behalf of Itself and Each Secured Claimant* [Case No. 18-11494, D.I. 204] (the "Order").

bearing the name of Debtor EMC.[4] U.S. Bank, acting at the direction of the Lenders, has reached an agreement with Wells Fargo that provides for the release of the Surety Collateral. As part of that agreement, Wells Fargo is requiring the current and former beneficiaries of the trust account—U.S. Bank, Philadelphia Indemnity Insurance Company as surety ("Philadelphia"), and the Trustee—to execute a written direction authorizing turnover of the Surety Collateral as directed by the Agent (at the direction of the Lenders) (the "Turnover Direction").[5]

4. On August 1, 2019, counsel to U.S. Bank made a written request to the Trustee's counsel asking the Trustee to execute the Turnover Direction so that the Surety Collateral could be turned over to the Agent. To be clear, the Trustee's assistance in collecting the Surety Collateral was not and is not required. All that is required is for the Trustee to execute the Turnover Direction, which provides for the turnover of Collateral—an express obligation of the Trustee under the terms of the Stipulation.

5. As of the date of the filing of this Motion to Enforce, which is more than ten business days after the date of U.S. Bank's written request, the Trustee has refused to execute the Turnover Direction. Accordingly, the Trustee is in breach of his contractual obligations under the Stipulation.

6. The terms of the Stipulation were heavily negotiated and approved by this Court. The Trustee knows that the Credit Party Debtors conveyed their interest in the Surety Collateral to U.S. Bank and is well aware of his turnover obligations under the Stipulation. Pursuant to the Stipulation, only specifically defined "Unliened Assets" are exempted from turnover by the Trustee. It is undisputed that the Surety Collateral is not an Unliened Asset and thus must be turned over to the Agent. The Trustee's delay must be seen for what it is: a transparent attempt

---

[4] The Surety Collateral was deposited into the trust account as collateral for bonds issued by Philadelphia Indemnity Insurance Company.

[5] A copy of the form of the Turnover Direction is attached hereto as **Exhibit C**.

to "shake the tree" and extract additional cash from the Lenders. The Court should not countenance such tactics.

7. The Agent and the Lenders have provided the Trustee with $375,000 to fund his professional fees and expenses (under the terms of the Stipulation). The Agent and the Lenders will not pay any further amounts to recover property that the Trustee—in the Stipulation approved by this Court—has already agreed belongs to the Agent and the Lenders and has agreed to turn over to them.

## BACKGROUND

### A.   The Credit Agreement & Partial Strict Foreclosure.

8. U.S. Bank is the administrative agent and the collateral agent under that certain Credit and Guaranty Agreement, dated as of January 5, 2015 (as amended, restated, supplemented or otherwise modified from time to time, and including any and all annexes, exhibits and schedules thereto, collectively, the "Credit Agreement"), by and among the Credit Party Debtors, the various lenders party thereto from time to time (the "Lenders"), and the Agent. Pursuant to the Credit Agreement, the Credit Party Debtors guaranteed the loans and all other obligations owing under the Credit Agreement. As of the Petition Date (defined herein), the obligations of the Credit Party Debtors to U.S. Bank under the Credit Agreement were in excess of $599 million.

9. In order to secure all of the obligations of the Credit Party Debtors under the Credit Agreement, the Agent and the Credit Party Debtors entered into that certain Pledge and Security Agreement dated as of January 5, 2015 (the "Security Agreement"). Pursuant to the Security Agreement, the Credit Party Debtors granted to U.S. Bank a first priority security interest in all substantially all of the Credit Party Debtors' assets. Accordingly, any and all

obligations owed by the Credit Party Debtors to U.S. Bank under the Credit Agreement are secured by fully perfected liens on the Credit Party Debtors' assets.

10. On June 25, 2018, pursuant to that certain Surrender of Collateral, Consent to Partial Strict Foreclosure, and Release Agreement (UCC 9-620) (the "Partial Strict Foreclosure Agreement"), the Credit Party Debtors conveyed to U.S. Bank, for the benefit of the Lenders, all of their respective interests in the Surrendered Collateral (as defined in the Partial Strict Foreclosure Agreement), including all proceeds thereof, wherever located, in partial satisfaction of their obligations under the Credit Agreement (such conveyance, the "Partial Strict Foreclosure").[6]

11. The term Surrendered Collateral included the Credit Party Debtors' interests in the Surety Collateral. The Partial Strict Foreclosure Agreement defines the term "Surrendered Collateral" to include "any residual interest in (or with respect to the return of) cash or money market instruments, or any similar security, held in trust, as collateral, or as surety" and all proceeds of the foregoing. *See* Partial Strict Foreclosure Agreement, Ex. 1. The Credit Party Debtors' interest in the Surety Collateral is Surrendered Collateral, because (as discussed in further detail herein) the Surety Collateral consists of money market instruments held in trust by Wells Fargo as collateral for the Credit Party Debtors' obligations under the Indemnity Agreement (as defined herein).

B. **The Chapter 7 Cases.**

12. On June 29, 2018 (the "Petition Date"), the Debtors filed petitions for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States

---

[6] A copy of the Partial Strict Foreclosure Agreement is attached hereto as **Exhibit D**.

Bankruptcy Court for the District of Delaware (the "Court"). George L. Miller was appointed as the interim chapter 7 trustee by the Office of the United States Trustee (the "U.S. Trustee").

13. On August 2, 2018, U.S. Bank filed a detailed proof of claim against each of the Credit Party Debtors (collectively, the "U.S. Bank Claims"). On August 3, 2018, the Trustee, in his capacity as interim trustee for the Credit Party Debtors, filed an omnibus objection to the U.S. Bank Claims (the "Claim Objection").

14. On August 16, 2018, U.S. Bank filed (i) the *Omnibus Response of U.S. Bank, National Association, to the Objections of George L. Miller, Interim Chapter 7 Trustee, to Proofs of Claim Filed by U.S. Bank, National Association, in the Above-Captioned Debtors' Cases* [Case No. 18-11494, D.I. 171] ( the "Claim Response"), and (ii) the *Motion by U.S. Bank for Resolution of Disputed Elections and for a Determination that Edward E. Neiger be Appointed as Permanent Trustee in the Above Captioned Cases* [Case No. 18-11494, D.I. 173] (the "Motion to Resolve Disputed Elections"). The Trustee informally objected to the Motion to Resolve Disputed Elections.

    **C.**    **The Stipulation.**

15. On October 8, 2018, U.S. Bank and the Trustee (together, the "Parties") entered into the Stipulation, which resolved the validity and enforceability of the Partial Strict Foreclosure Agreement, as well as the Claim Objection and the Motion to Resolve Disputed Elections, subject to Court approval.

16. Under the terms of the Stipulation, among other things, the Trustee acknowledged the validity and enforceability of the Partial Strict Foreclosure. See Stipulation ¶ 4. The Trustee further acknowledged that, with the exception of the Unliened Assets, all of the Credit Party Debtors' assets, including the Surrendered Collateral, are subject to a valid and enforceable

security interest in favor of U.S. Bank. *See* Stipulation ¶¶ 3-4. The Trustee agreed to turn over to U.S. Bank any remaining collateral (including Surrendered Collateral) in the Trustee's possession within ten business days of written request from U.S. Bank. *See* Stipulation ¶ 6. The Trustee also released U.S. Bank and the Lenders from, among other things, all claims relating to the Credit Agreement and the Partial Strict Foreclosure, including all causes of action under chapter 5 of the Bankruptcy Code. *See* Stipulation ¶ 9.

17.    In exchange, pursuant to the Stipulation, the Agent agreed that the Trustee is entitled to recover on the Unliened Assets for the benefit of the Credit Party Debtors' estates. *See* Stipulation ¶¶ 4, 13. The Agent consented to the Trustee's use of $375,000 of collateral to fund professional fees and expenses of the Credit Party Debtors' estates (including Trustee fees) that have been approved by the Court. *See* Stipulation ¶ 5. The Agent also agreed to provide information to the Trustee to the extent reasonably necessary for the Trustee to complete his duties required under the Bankruptcy Code. *See* Stipulation ¶ 12.

18.    On October 25, 2018, the Court entered an Order approving the Stipulation. See Order [Case No. 18-11494, D.I. 204]. In the Order, the Court expressly retained jurisdiction over any and all matters arising from or related to the implementation or interpretation of the Stipulation. *See id.* at ¶ 5.

    **D.**    **The Surety Collateral.**

19.    Prior to the filing of this Motion to Enforce, the Agent, taking direction from Lenders pursuant to the Credit Agreement, was directed to effectuate the release of the Surety Collateral. Wells Fargo, in turn, agreed to release the Surety Collateral upon receipt of a direction (i.e., the Turnover Direction) duly executed by the Agent, Philadelphia, and the Trustee.

**E.    The Trustee's Breach of the Stipulation and U.S. Bank's Efforts to Resolve the Dispute Without Judicial Intervention.**

20. On August 1, 2019, counsel to U.S. Bank contacted counsel to the Trustee and requested that the Trustee execute the Turnover Direction. To date, despite multiple communications and requests by counsel, the Trustee has refused to do so.

21. Accordingly, under the foregoing circumstances, U.S. Bank now has no alternative but to move this Court to compel the Trustee to comply with the terms that the Trustee agreed to in the Stipulation approved by the Court.

**ARGUMENT**

22. The Court has authority to interpret and apply its orders. When construing an agreed or negotiated form of order, such as the Stipulation and the Order, a court must approach the task "as an exercise of contract interpretation." *See In re Trico Marine Servs., Inc.*, 450 B.R. 474, 482 (Bankr. D. Del. 2011); *see also City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) ("An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation."). "At bottom, the goal is to determine the rights, duties, and reasonable expectations of the parties, as disclosed to and blessed by the Court." *In re Trico Marine*, 450 B.R. at 482.

**A.    The Surety Collateral Is Not Property of the Credit Party Debtors' Estates.**

23. As an initial matter, the Credit Party Debtors' interest in the Surety Collateral is not property of the Credit Party Debtors' estates because it was conveyed to the Agent prior to the Petition Date.

24. On June 25, 2018, the Credit Party Debtors and the Agent entered into the Partial Strict Foreclosure Agreement. Under the terms of that agreement, the Credit Party Debtors conveyed to the Agent all of their interest in the "Surrendered Collateral." The Credit Party

Debtors' interest in the Surety Collateral falls within the definition of Surrendered Collateral because it is the Credit Party Debtors' "residual interest in (or with respect to the return of) cash or money market instruments, or any similar security, held in trust, as collateral, or as surety." *See* Partial Strict Foreclosure Agreement, Ex. 1. Put simply, the Surety Collateral does not belong to the Credit Party Debtors' estates, because the Debtors conveyed their interest in the Surety Collateral to the Agent prior to the Petition Date under the terms of the Partial Strict Foreclosure Agreement.

25. In the Stipulation, the Trustee acknowledged "the validity and enforceability of the Partial Strict Foreclosure as to all assets of the [Credit Party Debtors] other than the Unliened Assets." *See* Stipulation ¶ 4. The term "Unliened Assets" is defined as "(i) estate causes of action, if any, to the extent such causes of action are "Commercial Tort Claims" (as defined in the New York Uniform Commercial Code § 9-102(a)(13)), and (ii) causes of action, if any, under chapter 7 of the Bankruptcy Code." *See* Stipulation ¶ 3. The Surety Collateral is not an Unliened Asset. Accordingly, by acknowledging the validity of the Partial Strict Foreclosure, the Trustee expressly agreed that the Agent presently holds legal title to the Credit Party Debtors' interest in the Surety Collateral.

    **B.**    **The Stipulation Clearly Obligates the Trustee to Execute the Turnover Direction.**

26. Although the Agent holds undisputed title to the Credit Party Debtors' interest in the Surety Collateral, Wells Fargo has requested that the Trustee execute the Turnover Direction before Wells Fargo will release the Surety Collateral. Accordingly, the Trustee currently has constructive possession of the Surety Collateral, because Wells Fargo will not release the Surety Collateral without the Trustee executing the Turnover Direction.

27. The Stipulation expressly provides that the Trustee shall turn over to U.S. Bank "any other Collateral (including Surrendered Collateral) in the Trustee's possession" within ten business days of written request from U.S. Bank. *See* Stipulation ¶ 6. As noted above, the Credit Party Debtors' interest in the Surety Collateral is Surrendered Collateral. Moreover, there is no dispute that the Surety Collateral is ***not*** an Unliened Asset, which is the ***only*** carve-out from the Trustee's turnover obligations under the Stipulation. Accordingly, the Stipulation required the Trustee to turn over the Surety Collateral within ten business days of written request from U.S. Bank.

28. On August 1, 2019, U.S. Bank provided the Trustee with a written request to turn over the Surety Collateral by executing the Turnover Direction. As of the date hereof, the Trustee has refused to execute the Turnover Direction. Accordingly, the Trustee has breached its obligation to turn over the Surety Collateral in the time and in the manner required by the terms of the Stipulation.

C. **The Imposition of Fees and Costs is Warranted.**

29. Rule 8020 of the Federal Rules of Bankruptcy Procedure authorizes this Court to impose costs for "failure to comply with any court order." This Motion to Enforce and associated filing fees have been necessitated by the Trustee's failure to comply with the clear terms of the Stipulated Order. Under the facts and circumstances as set forth in this Motion to Enforce and to be established at any hearing, the Trustee's unwarranted conduct in breaching the terms of the Stipulation justifies the imposition of costs and attorneys' fees incurred by U.S. Bank and the Lenders in connection with this matter.

[*Continued on Next Page*]

**RELIEF REQUESTED**

30. For the reasons set forth herein, U.S. Bank respectfully requests entry of the Proposed Order, in substantially the form attached hereto as **Exhibit A**, (i) enforcing the Stipulation and compelling the Trustee to execute the Turnover Direction, which provides for the turnover of approximately $9.6 million of Surety Collateral currently being withheld as a result of the Trustee's actions in violation of the Stipulation, (ii) finding that the Surety Collateral is not property of the Credit Party Debtors' estates, (iii) directing the Trustee to pay costs and attorneys' fees incurred by U.S. Bank and the Lenders in connection with this matter, and (iv) and granting such other and further relief as this Court deems necessary and proper.

Dated: August 29, 2019
Wilmington, Delaware

*/s/ Matthew P. Ward*
Matthew P. Ward (Del. Bar. No. 4471)
Nicholas T. Verna (Del. Bar No. 6082)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: nick.verna@wbd-us.com

-and-

Carey D. Schreiber, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: cschreiber@winston.com

*Counsel to U.S. Bank, N.A.*